UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALIXANDER JOSEPH LOPEZ, a minor child of deceased claimant KENNETH ROGER ANDRUSS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commission of Social Security,<br><br>Defendant. | Case No. 16-cv-00032-NJV<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21 |

Plaintiff Alixander Joseph Lopez seeks judicial review of an administrative law judge ("ALJ") decision denying an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act made by his deceased father, Kenneth Roger Andruss.  Plaintiff's request for review of the ALJ's partially favorable decision was denied by the Appeals Council.  The ALJ's decision is thus the "final decision" of the Commissioner of Social Security, which this court may review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Both parties have consented to the jurisdiction of a magistrate judge.  (Docs. 6, 9.)  The court therefore may decide the parties' motions for summary judgment.  For the reasons stated below, the court will grant Plaintiff's Motion and deny Defendant's Motion.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Kenneth Roger Andruss, acting pro se, applied for Disability Insurance Benefits pursuant to Title II of the Social Security Act on December 6, 2011, alleging an onset date of disability of February 11, 2010. (AR 219, 226.) The agency denied Andruss' application initially on March 9, 2012, (AR 90-114, 116-17) and on reconsideration on December 14, 2012 (AR 118-36, 167-172). Andruss filed a request for hearing and then died on September 21, 2013. (AR 248.) Plaintiff, Andruss' successor in interest, acquired representation on October 9, 2013, and a hearing was held before an ALJ on October 28, 2013. (AR 43.) .

On February 12, 2014, the ALJ issued a partially favorable decision finding that Andruss became disabled on November 1, 2012. (AR 39-52.) The Appeals Council denied review on September 24, 2015. (AR 11.)

Plaintiff filed this appeal on January 4, 2016. Defendant filed her Answer on May 3, 2016, and the Administrative Transcript was filed the same day. (Docs. 12, 13.) On August 17, 2016, Plaintiff filed his Motion for Summary Judgment. (Doc. 18.) On October 21, 2016, Defendant filed her Motion for Summary Judgment. (Doc. 21.) Plaintiff filed his Reply on October 28, 2016. (Doc. 17.)

# SUMMARY OF THE MEDICAL EVIDENCE[1]

Andruss was born on March 15, 1974, had a high school education, and was thirty-six years old at the time of his alleged onset date of February 11, 2010. He was thirty-nine years old at the time of his death on September 21, 2013.

In his psychological consultative examination dated November 18, 2012, Telford Moore, Ph.D., concluded that Andruss' mental condition would prevent him from working. His emotional and cognitive condition was seriously deteriorated, and his GAF was 25. (AR 746.)

Andruss' history of depression and alcohol abuse was noted when he was admitted to the hospital on October 12, 2009, with altered mental status, auditory and visual hallucinations. (AR 432-438.) During an emergency room visit for a witnessed seizure on April 21, 2010, he had reported "troubles with flashbacks." (AR 426.) A positive depression screen was noted on July 17, 2012. (AR 720.)

Andruss suffered from recurrent right (dominant) shoulder instability and pain secondary to recurrent dislocations from seizures, and was diagnosed in June 2012 with osteoarthritis which failed non-operative treatment. (AR 666.) Both shoulders had been injured by falls during seizures. (AR 416-418.) A right shoulder MRI dated July 1, 2010, found the following:

1. Deep hatchet deformity involving the humeral head anteriorly most likely secondary to an old impaction fracture from a posterior dislocation.
2. Moderately advanced degenerative joint disease involving the right shoulder with joint effusion.
3. Biceps tenosynovitis.
4. Tendinosis involving the rotator cuff.
5. Degenerated and torn glenoid labrum.

(AR 445.)

Surgeon Brian Feeley, M.D., examined Andruss on October 11, 2010, and noted that

---

[1] These facts are largely taken verbatim from Plaintiff's Motion . *See* Pl. Mot. (Doc. 18) at 3-5. Defendant did not object to Plaintiff's statement of fact, from which the court concludes that they are undisputed under Federal Rule of Civil Procedure 56(e).

"[s]ymptoms began over a year ago before from suffering a seizure and falling to the floor. He complains of pain with all movements… ¶ He has dislocated his shoulder 3 times." (AR 469.) Andruss was seen at Sutter Coast Hospital emergency room for right shoulder pain on March 22, 2011 (AR 493-494), July 14, 2011 (AR 489-491), and on November 13, 2011, for moderate to severe right shoulder pain, worse with attempts to move his right arm. He received a Toradol injection. (AR 485-486.) A right shoulder CT scan dated January 30, 2012, revealed moderate to severe osteoarthritic changes, deformity of the right humeral head, and marked attenuation of the acromiohumeral joint space, with mild osteoarthritic changes at the acromiohumeral joint space. (AR 391-392.)

Dr. Feeley performed right shoulder arthroplasty on June 4, 2012. (AR 643-644.) However, Andruss continued to suffer from chronic right shoulder pain and from recurrent dislocation of his left shoulder as well. Following physical therapy, his right shoulder had healed to the point that Dr. Feeley released him to normal activities on January 28, 2013 (AR 795); however, Andruss' shoulder impairments and increasingly severe left shoulder pain continued to limit his activities. He reported left hand numbness on December 7, 2012. (AR 790.) Left shoulder x-rays dated May 22, 2012 (AR 683), November 10, 2012 (AR 716), and June 22, 2013, showed abnormalities. His left shoulder pain had worsened and limited range of motion was found on July 17, 2012. (AR 721.)

Andruss was found by the Veterans Administration ("VA") to be 10% disabled due to a service-connected right knee injury. (AR 818-819.) Examination found lateral meniscus tear of the anterior horn in the right knee with early degenerative changes. An MRI dated October 15, 2010, showed early degenerative joint disease. (AR 444.)

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (id. § 416.920(a)(3)), and must use a five-step

4

sequential evaluation to determine whether the claimant is disabled (id. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Andruss' application for benefits under the required five-step sequential evaluation.  (AR 43-52.)

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id.* The ALJ found that Andruss had not engaged in substantial gainful activity from the alleged onset date of February 11, 2010, through his death on September 21, 2013.  (AR 46.)

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Andruss suffered the following severe impairments:  bilateral shoulder problems; right knee problems; seizures; post-traumatic stress disorder (PTSD); mood disorder; and polysubstance abuse (alcohol and methamphetamines). (AR 46.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv),(e). Here, the ALJ found that from the alleged onset date of disability, February 11, 2010, through September 21, 2013, Andruss did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 46.) Next, the ALJ found that beginning on November 1, 2012, and continuing through September 21,

1   2013, Andruss had the residual functional capacity to perform light work as defined in 20 CFR
2   404.1567(b) and 416.967(b) with several limitations. (AR 48.)
3       At Step Four, the ALJ found that Andruss could not perform his past relevant work from
4   February 11, 2010, through September 21, 2013. (AR 49.)
5       At Step Five, after consulting with a vocational expert, the ALJ found that there were no
6   jobs that existed in the significant numbers in the national economy that Andruss could have
7   performed beginning on November 1, 2012, through September 21, 2013. (AR. 51.)
8       The ALJ found that Andruss had become disabled on November 1, 2012, and continued to
9   be disabled through his date of death on September 21, 2013. (AR 51.)

## ADDITIONAL MEDICAL EVIDENCE

At the hearing on October 28, 2013, the ALJ directed Plaintiff's counsel to continue to attempt to obtain records from the VA. (AR 88.) The records were finally printed and sent to counsel in July 2014. In the interim, the ALJ issued her partially favorable decision on February 28, 2014. Thus the ALJ did not have the evidence from the VA to consider in reaching her decision.

Review was requested from the Appeals Council on April 4, 2014, and the new evidence from the VA was submitted to the Appeals Council on August 7, 2014. The Appeals Council denied review on September 24, 2015.

## DISCUSSION

Plaintiff argues that the ALJ's established onset date of November 1, 2012, is not supported by substantial evidence, as considered in light of the record as a whole. He contends that new and material evidence from the VA supports the alleged onset date of February 11, 2010, for both physical and mental reasons. He further contends that the ALJ failed to adequately justify the chosen onset date of November 1, 2012.

**Evidence Before the ALJ**

The ALJ explained her reasoning for choosing the onset date of November 1, 2012, as follows:

> [t]he established onset date of November 1, 2012 is based on a combination of factors between when claimant was seen by psychological consultative examiner, Dr. Telford I.

6

> Moore with a GAF of 25 (Exhibit 17F/35), along with further evidence of claimant's upper extremity and chronic pain as they became better documented. Claimant was referred to mental health counseling in April 2013 (Exhibit 28F/13), so the established onset date is about six months prior to the referral.

(AR 47.)

Plaintiff argues that while the ALJ justified the onset date of November 1, 2012, based on records in 2013, there is no mention of evidence which would support an earlier onset date and was before the ALJ. This evidence included: 1) a right shoulder MRI in July 2010, with significant findings of deformity and degeneration; 2) a surgeon's report of three shoulder dislocations, limited range of motion and "shoulder catching," and 3) a CT scan of January 30, 2012, that revealed "moderate to severe osteoarthritic changes, deformity of the right humeral head, and marked attenuation of the acromiohumeral joint space." (AR 371, 481.)

Andruss also had a complete right shoulder replacement in 2012 due to "severe degenerative changes on the glenoid and the humeral head." (AR 644.) This was prior to the onset date established by the ALJ, yet was not mentioned in the decision regarding either the duration and extent of the problem, or the degree of recovery.

While the ALJ is not required to discuss all the evidence presented by a claimant, she must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (1984) (quoting *Carter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Here, the ALJ did not explain why she rejected the above evidence and or why she then chose an established onset date "about six months prior to the [mental health] referral." *See generally*, *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981) (full and detailed findings are essential to allow the courts to review administrative decisions intelligently).

**Evidence Before the Appeals Council**

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). In this case, the new VA evidence submitted to the Appeals Council supports the earlier onset date in February

2010 alleged by Andruss, rather than the November 2012 date chosen by the ALJ. Regarding Andruss' right shoulder, evidence regarding the conditions of avascular necrosis of the humeral head, fracture of the humeral head, degenerative joint disease and bicep tenosynovitis were documented in August 2010. (AR 907.) The right shoulder was deemed to be "severely limited in its usefulness" on April 29, 2011. (AR 873.) He was unable to lift more than five pounds on July 11, 2011, (AR 870) and on July 25, 2011 (AR 925). His deformity was also considered "severe" on July 11, 2011. (AR 870.) Steroid injections were performed in July 2011 (AR 926) and October 2011 (AR 921). Lumbar disc disorder was diagnosed in August 2010. (AR 905) Sleep dysfunction/insomnia was diagnosed in August 2010. (AR 904.)

Regarding mental impairments, Andruss was determined positive for PTSD in a VA screening on August 6, 2010. (AR 881.) An evaluation was made resulting in a diagnosis of Generalized Anxiety Disorder and PTSD that same day (AR 881, 903) and he was referred to mental health for treatment. (AR 880.)

**CONCLUSION**

The Commissioner's attempts to ignore Plaintiff's arguments and instead focus the court on evidence in support of the onset date as determined by the ALJ are misguided. It is not for this court to evaluate the ignored evidence, assign it weight and then reweigh it against the other evidence of record, or to provide a post hoc justification for its rejection. Instead, the court is to review the ALJ's evaluation of the evidence. This is why the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d at 1395). The evidence outlined above that was presented to the ALJ is consistent with Andruss' claim as to the onset date and should have either been accepted or specifically rejected by the ALJ. The court thus finds that the ALJ erred in failing to discuss this substantial relevant information presented to her regarding the onset date. The case must be remanded for the ALJ to make explicit findings regarding that evidence. Further, the court finds that the evidence presented for the first time to the Appeals Council may have altered the ALJ's determination of the onset date. Accordingly, the court finds that the case must be remanded for consideration of that additional evidence as well.

1   For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment
2   and REMANDS this matter for further proceedings in accordance with this Order.
3   A separate judgment will issue.
4   **IT IS SO ORDERED**.
5   Dated: February 13, 2017



NANDOR J. VADAS
United States Magistrate Judge